IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM N. LUCY, | ) | |
| AIS #204880 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: 2:19-CV-498-MHT-CSC |
| | ) | |
| TAHIR SIDDIQ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff William Lucy, who is currently confined in the Elmore Correctional Facility, in Elmore, Alabama, filed the instant pro se action under 42 U.S.C. § 1983, seeking relief for certain claimed violations of his federally protected rights while confined in the Bullock Correctional Facility ("BCF"), in Union Springs, Alabama. Docs. 27, 46.[1] Plaintiff brings suit against: (1) "Medical Defendants," (a) Dr. Tahir Siddiq, (b) "R.N. D.O.N." Treasa Ann Krauel ("Hakel"),[2] (c) Dr. Hugh Hood, (d) Nurse Tewanda Appling, and (e) Wexford Health Sources, Inc.; and (2) "ADOC Defendants," (a) BCF Warden Patrice Richie and (b) Business Office Supervisor Laquanda Harris, for their alleged actions in connection with Plaintiff's medical care. *See* Docs. 13, 27, 46, 52. For relief, Plaintiff seeks monetary damages and injunctive and declaratory relief. Doc. 27 at 4.

Pursuant to the Court's Orders, Medical Defendants filed an answer, special report, supplemental special reports, and supporting evidentiary material addressing Plaintiff's claims for relief. Docs. 13, 21, 23, 32, 37, 38, 43 52,[3] 59. ADOC Defendants likewise filed an answer,

---

[1]     On September 30, 2019, Plaintiff filed an amended complaint to assert an additional ground for relief against Defendants. *See* Doc. 27. Approximately one month later, Plaintiff amended his complaint to assert his allegations against additional Defendant Nurse Tewanda Appling. Doc. 46. Unless otherwise indicated, the Court will refer to Plaintiff's amended complaint at Doc. 27 as Plaintiff's operative complaint.

[2]     In response to Plaintiff's Response to Show Cause Order, Defendant Treasa Hakel clarified, after her marriage, her name changed to Treasa A. Krauel. Doc. 44. As such, Treasa Hakel and Treasa Krauel are the same person. *Id.*

[3]     The Court construes Defendant Appling's answer at Doc. 52 to incorporate the legal argument asserted by Medical Defendants in their answer and special report. *See* Doc. 52 at 7.

special report, and supporting evidentiary material addressing Plaintiff's claims. Docs. 14, 39, 43. The Court informed Plaintiff that Defendants' special reports, as supplemented, may, at any time, be treated as motions to dismiss or as motions for summary judgment, and the Court explained to Plaintiff the proper manner to respond to a motion for summary judgment. Doc. 45. The Court further directed Plaintiff to respond to Medical Defendants' claim that Plaintiff's claims are due to be dismissed for failure to exhaust administrative remedies. *Id*. at 1. Plaintiff filed his response to Defendants' special reports and supplemental special reports. Doc. 55. This case is now pending on Defendants' motions for summary judgment. Upon consideration of such motions, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the Court concludes that Medical Defendants' motion for summary judgment (Docs 21, 32[4]), and ADOC Defendants' motion for summary judgment (Doc. 39), are due to be **GRANTED**. [5]

## I.   Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322-324.

When defendants meet their evidentiary burden, as Defendants have here, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute

---

[4]        In their second special report, Medical Defendants expressly adopt the legal argument set forth in their original special report. *See* Doc. 32 at 4.

[5]        While the Court treats Medical Defendants' motion as a motion for summary judgment, as explained below, the Court will analyze Medical Defendants' affirmative defense that Plaintiff failed to exhaust his administrative remedies pursuant the Rule 12(b)(6) motion to dismiss standard.

material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this Court should accept as true "statements in [Plaintiff's] verified complaint, [any] sworn response to the [Defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *see also United States v. Stein*, 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are

self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'").  However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the court, a pro se litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact.  *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, a plaintiff's pro se status alone does not mandate this court disregard elementary principles of production and proof in a civil case.  Here, Plaintiff fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against all Defendants.  *See Matsushita*, 475 U.S. at 587.

## II.   Statement of Facts

In his amended complaint, Plaintiff alleges, after being transferred from Fountain Correctional Facility ("FCF") to BCF, Defendants conspired to defraud Plaintiff when they wrongfully confiscated his medications and then fraudulently demanded Plaintiff pay high co-pays to reacquire his prescribed pain medication.  Doc. 27 at 3.  Plaintiff asserts that Defendants caused Plaintiff emotional distress and, after being directed by the Court to file a supplemental report, Medical Defendants retaliated against Plaintiff by changing his order from deodorant to aspirin and by withholding blood pressure medication for two days.  *Id.*

Plaintiff's claims stem from the following facts, viewed in the light most favorable to Plaintiff:

Plaintiff was transferred from FCF to BCF on March 27, 2019.  Doc. 21-1 at 2.[6]  On the dates relevant to Plaintiff's claims, Defendant Richie was Warden of BCF (Doc. 39-1 at 1),[7] Defendant Harris was acting business manager at BCF (Doc. 39-2 at 2), and Defendant Wexford Health Sources, Inc., held the contract with the Alabama Department of Corrections ("ADOC") to provide healthcare related services to Alabama state inmates incarcerated at the Alabama state correctional facilities, including BCF.   Doc. 23-2 at 1-2.   Pursuant to ADOC Administrative Regulation Number 703, which was in force when Plaintiff arrived at BCF:

> It is the policy of the ADOC for all inmates to have access to healthcare regardless of their ability to pay.  No inmate shall be denied care because of a record of non-payment or current inability to pay for health services.
>
> Inmates, however, do not have the right to specify which health personnel they see. ADOC is not required to provide health care to an inmate free of charge when such care would not be free outside the correctional setting and when an inmate has the means to pay.  Though the law requires that inmates' serious medical needs be met, it does not guarantee free medical care when inmates have the ability to pay.
>
> It is, therefore, a legitimate exercise of ADOC's authority to impose medical co-pay designed to reduce malingering among inmates and to deter the abuse of inmate sick call.

Doc. 43-1 at 1.  Regulation 703 also defines when inmates are not charged co-pays for medical services (*id*. at 9-10), and when inmates are to be charged co-pays for medical treatment.  *Id*. at 10-12.

Upon arrival at BCF, Plaintiff's vitals were taken and were all within normal range.  Doc. 21-1 at 2; *see also* Doc. 21-2 at 13.  Two days later, Defendant Siddiq, Plaintiff's physician, wrote Plaintiff prescriptions for Humulin, Lipitor, Norvasc, Glucophage, and Aspirin.  Doc. 21-1 at 3; *see also* Doc. 21-4 at 19-24.  Plaintiff's medical records show, on April 2, 2019,[8] Defendant Siddiq wrote Plaintiff a prescription for Naproxen; on April 16, Defendant Siddiq wrote Plaintiff a

---

[6]      Doc. 21-1 is Defendant Siddiq's affidavit.

[7]      Upon review of Defendant Patrice Richie's pleadings, it appears, while this case was pending, she changed her last name to Jones.  *See* Doc. 39-1.  For purposes of this Recommendation, the Court refers to this defendant as Defendant Richie.

[8]      Unless otherwise indicated, Plaintiff's allegations all relate to his medical treatment in 2019.

prescription for Naproxen; on April 16, Plaintiff was provided a cane and a bottom bunk profile;[9] on April 30, Plaintiff received blood and chemical tests; on May 2, Defendant Siddiq wrote Plaintiff a prescription for Tylenol; and on May 3, Defendant Siddiq wrote Plaintiff a prescription for Naproxen. Doc. 21-1 at 3-4; *see also* Docs. 21-3 at 18-19, 21-4 at 25-26, 21-5 at 1-2.

Plaintiff's medical records also demonstrate, prescriptions were written for Plaintiff for Amoxicillin on May 7, and for Tylenol on May 14. Doc. 21-1 at 3; *see also* Doc. 21-5 at 3-4. On May 22, a medical note shows that Plaintiff refused any pain relief medication until he could see the doctor and explained that the prescribed medication was ineffective. Doc. 21-1 at 4; *see also* Doc. 21-4 at 11. Plaintiff's medical records demonstrate that prescriptions were written for Plaintiff for Lisinopril and Naproxen on May 23. Doc. 21-1 at 3; *see also* Doc. 21-5 at 5-6. That same day, Plaintiff submitted an "Inmate Request Slip," in which Plaintiff requested an appointment to speak with Defendant Appling to receive a refund "of the un-just co-pays" taken from his PMOD account. Doc. 23-2 at 18. On May 24, Plaintiff received a prescription for Losartan. Doc. 21-1 at 3; *see also* Doc. 21-5 at 7.

On May 28, Plaintiff submitted a medical grievance using BCF's grievance forms, in which he asserts:

> My blood pressure medicine schedule has deliberately altered. One of the blood pressure pills I has been given [sic] (green pill) at 4:00 am for years has been rescheduled for 10:00 am and my blood pressure pill I was scheduled to get (pink pill) Lasentapril [sic] has been canceled. This is malicious act during these 100 degree days and also very dangerous.

Doc. 23-2 at 15. Also on May 28, Defendant Appling responded to Plaintiff's May 23 "Inmate Request Slip," in which Defendant Appling requested Plaintiff to send her a copy of his PMOD charge sheet to confirm whether the charges were incorrect. Doc. 23-2 at 18.

Two days later, Plaintiff requested copies of his PMOD transactions to show Defendant Appling the co-pay deductions incurred in April and May 2019. Doc. 55-1 at 10. In reply, staff at BCF indicated that Plaintiff would be charged 50 cents for each copy and that Plaintiff would receive the documents by June 5. *Id*.

Also on May 30, Defendant Appling responded to Plaintiff's May 28, grievance:

> Mr. Lucy, I have modified your order for Losartan so that you will get it at 04:00 a.m. as it was before along with your other blood pressure medication. As I

---

[9] Plaintiff received the bottom bunk profile and cane in response to Plaintiff's April 13, sick call request. Doc. 55-1 at 2.

explained to you earlier today, if [Defendant] Siddiq originally ordered your medication at 10:00 a.m., and you want it at 4:00 a.m., your order must be modified to change the pill call time to 04:00 a.m.  When [Defendant] Siddiq get [sic] a que to reorder your medication all he does is click reorder, the computer is going to reorder the medication for the original order which is 10:00 a.m., this order must be modified to change the pill call back to 04:00 a.m.  If you find that this has occurred all you have to do is ask the pill call nurse to change your order back to 04:00 a.m. or just send a request to me and I will be glad to change the time.  We can modify the times on medical medications only that are not nonformulary.  We are not allowed to change times on mental health medication.  [Defendant] Siddiq discontinued your order for Lisinopril, because he increased your order for Losartan to 100 mg. Thanks.

Doc. 23-2 at 16.  On June 5, Plaintiff signed a medical grievance form in which Plaintiff asserts:

The fact that the Neproxsin (pain pills) stoped [sic] after my PMOD account was exhausted from the co-pay(s) is evidence that the medical staff is deliberately indifferent to my back and knee(s) pain and how this stress from suspending my pain pill make[s] my blood pressure rise. ** I need my pain meds. To continue and not to stop.

Doc. 55-1 at 13.[10]  On June 17, Plaintiff submitted a "Sick Call Request," in which Plaintiff asserts that he did not need to see the doctor, but rather, Plaintiff needed Naproxen to treat his knee and back pain.  Doc. 55-1 at 14.  The next day, Plaintiff filed a medical grievance in which Plaintiff asserts:

I have attempted to see [Defendant] Appling to give her a copy of my PMOD monthly report as she requested to no avail.  Although I went to see her a number of times I was told she was not in today; even the day I saw her sitting in her office behind her desk.  I was told she is not in today.  This is the last attempt to recover my money taken for co-pay (illegally). If not settled (Returned) in 3 days I will move to another arena.

Doc. 55-1 at 15.  On June 19, Plaintiff received a prescription for Naproxen.  Doc. 21-1 at 3; *see also* Doc. 21-5 at 8.  On June 20, Defendant Hakel responded to Plaintiff's June 18 grievance and requested that Plaintiff send her a copy of his PMOD account.  Doc. 55-1 at 15.  Upon receipt of his PMOD account, Defendant Hakel asserted that she would speak with the business office.  *Id.*  On June 24, Plaintiff submitted another medical grievance addressed to Defendant Hakel in which Plaintiff asserts:

---

[10]  It is unclear to the Court whether Plaintiff submitted this grievance. There is no response included or attached to Plaintiff's exhibit and Plaintiff makes no assertion that this grievance went unresolved.

> You have enough information above to instruct the business office to forward you whatever you need from my PMOD Account. I arrived here on or about March 27, 2019; unless I have confirmation from the business office that all of the funds deducted co-pays has been returned to my account by 6/27/19; I have exhausted all administrative remedies and I will go forward.

Doc. 23-2 at 17. One day later, Defendant Hakel responded to Plaintiff's grievance:

> Mr. [Lucy], I have to have a copy of your PMOD account. I can not instruct the business office to do anything. I have to be able to show the business office you were overcharged. So, please send me a copy of your PMOD account by 6/27/19!

*Id.* On July 15, Plaintiff filed the pending civil suit against Defendants. Doc. 1. Approximately one month later, Plaintiff's medical records indicate that Defendant Siddiq saw Plaintiff and that Plaintiff had no complaints. Doc. 21-1 at 4; *see also* 21-4 at 12. In October 2019, Plaintiff filed a grievance and a grievance appeal, in which Plaintiff asserts he was wrongfully denied new diabetic shoes. Docs. 55-1 at 18-20.[11]

## III. Discussion

In his four-count amended complaint, Plaintiff makes the following allegations: all Defendants conspired to confiscate Plaintiff's medications; all Defendants defrauded Plaintiff when, after they confiscated Plaintiff's medications, Plaintiff was then required to make co-payments for his own medication; all Defendants caused Plaintiff emotional distress; and Medical Defendants retaliated against Plaintiff when the Court directed them to file a supplemental special report. *See* Doc. 27. Plaintiff further asserts all Defendants acted deliberately indifferent to his serious medical needs.

Medical Defendants deny each allegation in Plaintiff's amended complaint and further maintain, Plaintiff's claims are barred by Plaintiff's failure to exhaust his administrative remedies while confined in BCF. Docs. 13, 21, 23, 32, 37, 38. ADOC Defendants also deny Plaintiff's allegations and further assert they are entitled to sovereign and qualified immunity. Docs. 14, 39, 43.

---

[11]    Plaintiff's exhibit is unclear as to whether he submitted this grievance appeal. *See* Doc. 55-1 at 20. While Plaintiff signed his grievance appeal, there is no response and, in his response to Medical Defendants' special report, Plaintiff fails to assert whether his appeal went unresolved.

A.    **Plaintiff's Claims Asserted Against Medical Defendants**

(i)    **Exhaustion of Administrative Remedies**

As a threshold issue, Medical Defendants assert, because Plaintiff failed to exhaust his administrative remedies, this case should be dismissed.  Doc. 13 at 7; *see also* Doc. 52 at 7. Plaintiff maintains that he properly exhausted his administrative remedies.  Doc. 55 at 3-4.

Pursuant to the PLRA, 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  "The 'exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  *Rose v. Rich*, No. 519CV00123RDPJEO, 2019 WL 6712138, at *2 (N.D. Ala. Nov. 8, 2019), *report and recommendation adopted*, No. 519CV00123RDPJEO, 2019 WL 6702042 (N.D. Ala. Dec. 9, 2019) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).  "Lack of exhaustion of an administrative grievance is an affirmative defense to a lawsuit brought pursuant to § 1983."  *Id*. (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Arias v. Perez*, 758 F. App'x 878, 880 (11th Cir. 2019)).

"Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense—as in [Plaintiff's] case—is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'"  *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (citations and footnote omitted).

"In considering a motion to dismiss, this court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff."  *Rose*, 2019 WL 6712138, at *2 (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004)). "That factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A complaint, or any claim therein, is subject to dismissal under Rule 12(b)(6) when the allegations, on their face, show that an affirmative defense bars recovery on the claim."  *Id*. (citing *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)).

That being said, "[w]here exhaustion—like jurisdiction, venue, and service of process—is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to

consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant*, 837 F.2d at 1376 (citation and footnotes omitted). "Requiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement and would unnecessarily undermine Congress's intent in enacting the PLRA's exhaustion requirement: that is, to 'reduce the quantity and improve the quality of prisoner suits.'" *Id.* at 1376-77 (citation and footnotes omitted).

The Court finds, under the facts of this case, Plaintiff exhausted his administrative remedies on his claims asserted against Medical Defendants. While from the record it is not clear whether Plaintiff appealed the grievance responses on his claims relevant to this case, it is clear from the record that Defendants Appling and Hakel were "on notice" that Plaintiff believed the withdrawal of co-pays from his account were excessive and fraudulent. Indeed, Plaintiff sought, on numerous occasions, for his PMOD account to be reviewed for error. *See* Doc. 23-2 at 17, 18; *see also* Doc. 55-1 at 10, 15-16.

"Section 1997e(a)'s exhaustion requirement is designed 'to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued ....'" *Id.* (citing *Jones,* 549 U.S. at 219) (quoting *Johnson,* 385 F.3d at 522). "The statute merely requires inmates to complete the administrative review process in compliance with the prison's grievance procedures, so that there is 'time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* (quoting *Woodford v. Ngo,* 548 U.S. 81, 93 (2006) (alteration and quotation marks omitted).

While this case poses a close call, because the record is not clear whether Plaintiff appealed his grievance responses and because Plaintiff asserts that he did, in fact, exhaust his administrative remedies, the Court finds Medical Defendants were on notice of Plaintiff's complaints. Accordingly, the Court rejects Medical Defendants' contention that Plaintiff's claims are subject to dismissal for Plaintiff's failure to exhaust his administrative remedies.

### (ii)     Conspiracy to Defraud

In his amended complaint, Plaintiff maintains that Medical Defendants conspired to defraud Plaintiff when, upon his arrival at BCF, Medical Defendants confiscated Plaintiff's Naproxen. Doc. 27 at 2-3. Medical Defendants deny Plaintiff's allegations and assert that, "[w]hen an inmate gets transferred from one facility to another, the prescriptions of the inmate are

transported by the [ADOC] from one correctional facility to another." Doc. 37-1 at 3-4. Medical Defendants maintain, pursuant to ADOC policy, because "inmates are not allowed to have controlled substance medications on their person (KOP)[,]" Plaintiff would not have been permitted to keep his prescribed Naproxen on his person. *Id*. at 4. Medical Defendants assert, Plaintiff's allegations that his medications were confiscated are incorrect and that Plaintiff was prescribed and provided his medications. Doc. 32-1 at 3.

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Court has carefully reviewed Plaintiff's allegations of conspiracy asserted against Medical Defendants and finds they allege no facts suggestive of conspiracy to defraud.

To establish a § 1983 conspiracy, "a plaintiff must show among other things, that the defendants reached an understanding to violate [his] rights." *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (internal quotation marks and citation omitted) (brackets in original). "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequately to show illegality. . . [T]hey must be placed in the context that raises the suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Plaintiff's claims of conspiracy to defraud are self-serving, purely conclusory allegations that fail to assert those material facts necessary to establish a conspiracy by Medical Defendants. Plaintiff alleges no facts suggesting a conspiracy or an agreement other than seemingly contending Medical Defendants had a common goal, scheme, or purpose to violate Plaintiff's constitutional rights when he was transferred to BCF. As asserted by Defendant Siddiq in his affidavit, it is

pursuant to ADOC policy that inmates not have a controlled substance medication on their person. Doc. 37-1 at 4. The record further shows, shortly after Plaintiff's arrival at BCF, Defendant Siddiq prescribed Plaintiff Naproxen from: (a) April 2 through April 21, 2019; (b) May 3, through May 9, 2019; (c) May 22, through May 28, 2019; and June 19, through June 23, 2019. *Id*. The record shows that Plaintiff received numerous prescriptions for medication and is completely devoid of a conspiracy to defraud. Plaintiff's mere use of the word "conspiracy" regarding the actions of Medical Defendants about which he complains is insufficient to state a conspiracy claim. Similarly, Plaintiff's allegations fail to allow the Court to draw the conclusion that a conspiracy claim is plausible. *Iqbal*, 129 S.Ct. at 1949. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a conspiracy allegation that is vague and conclusory fails to state a claim upon which relief can be granted and may be dismissed). Accordingly, Medical Defendants are due to be granted summary judgment on Plaintiff's claim of conspiracy.

### (iii)   Deliberate Indifference

Plaintiff alleges Medical Defendants were deliberately indifferent to his serious medical needs and that their co-pay policy resulted in delay or denial of Plaintiff's medical treatment. Doc. 27 at 3. Plaintiff contends, while under Medical Defendants' care, Plaintiff's prescriptions were either delayed or denied because Plaintiff was required to submit co-pays prior to receiving his medications and that he endured pain because he could not afford both hygienic items and medication. *Id*. Medical Defendants deny they were deliberately indifferent in treating Plaintiff and that Plaintiff's medical treatment was never delayed or denied due to ADOC's co-pay policy. *See* Docs. 21, 32-1 at 5.

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To demonstrate a denial of medical care in violation of the Eighth Amendment, Plaintiff must prove both an objective and subjective component. The objective element requires Plaintiff to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one

that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (quotation marks and citation omitted).

The subjective component of Plaintiff's medical claim requires that he demonstrate "deliberate indifference" to a serious medical need. *Farrow*, 320 F.3d at 1243. Deliberate indifference is shown by establishing that a defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. It may be demonstrated by either actual intent or reckless disregard. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Id.* at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding a defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

"Deliberate indifference" also entails more than mere negligence. *Estelle*, 429 U.S. at 106; *Farmer*, 511 U.S. at 835.

> The Supreme Court clarified the "deliberate indifference" standard in *Farmer* by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970, 128 L.Ed.2d 811. In interpreting *Farmer* and *Estelle*, this Court explained in *McElligott* that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott*, 182 F.3d at 1255; *Taylor*, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

*Farrow*, 320 F.3d at 1245-46.

"Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill*, 40 F.3d at 1187 (quotation marks and citations omitted). "Cases stating a constitutional claim for immediate or emergency medical

attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id*.

> The seriousness of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious. An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that [t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay. Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill*, 40 F.3d at 1188-89 (quotation marks and citations omitted) (footnotes omitted). Further "whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quotation marks and citation omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (holding that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution).

Medical Defendants' evidence includes affidavits from Defendants Siddiq (Docs. 21-1, 37-1), Hakel (Docs. 31-1, 32-1, 59-2), and Appling (Docs. 51-1, 59-1), and Plaintiff's medical records. *See* Docs. 21-2 – 21-8.

Defendant Siddiq, Medical Director at BCF is a licensed physician in the state of Alabama. Defendant Siddiq is employed by current inmate healthcare provider, Defendant Wexford Health Sources, Inc. Defendant Siddiq provided extensive testimony in his affidavits, explaining Plaintiff's medical history and how he and his staff treated Plaintiff. *See* Docs. 21-1, 37-1. Citing to Plaintiff's medical records, Defendant Siddiq provides testimony as to Plaintiff's prescriptions and treatment while confined in BCF. *See e.g.*, Doc. 21-1.

Assuming Plaintiff's condition presents a serious medical need, which is not in dispute, Plaintiff presents no evidence sufficient to create a genuine issue of disputed fact regarding the

claim Medical Defendants acted with deliberate indifference to his medical needs. As to Plaintiff's allegations that Medical Defendants denied, delayed, or provided ineffective treatment, "to recover on [his] claim[s] of inadequate medical care, [Plaintiff] had to prove that [Medical Defendants] engaged in 'acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs.'" *Hamm*, 774 F.2d at 1574-75 (citing *Estelle,* 429 U.S. at 106) (further citation omitted). Though "[a] 'doctor's decision to take an easier and less efficacious course of treatment' may constitute deliberate indifference;…a mere difference of opinion between the doctor and a prisoner as to the proper diagnosis or course of treatment will not." *Wallace v. Sheriff,* 518 F. App'x 621, 622 (11th Cir. 2013) (quoting *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989)).

While Plaintiff claims his medication should not have been confiscated or asserts that his treatment was delayed, his evidence supporting these claims is sparse and is also contradicted by the record. Indeed, while Plaintiff asserts that being required to submit a co-pay to receive his medications delayed treatment, upon review of Plaintiff's medical records, Plaintiff received timely prescriptions notwithstanding his continued complaints as to the co-pay charges. *See* Docs. 21-2 – 21-8.

Plaintiff provides no expert or other evidence that Medical Defendants' actions failed to meet appropriate professional standards. The only evidence concerning these allegations are Plaintiff's sworn amended complaint and medical grievances.

Plaintiff's medical records demonstrate, however, Plaintiff received extensive medical treatment while under Medical Defendants' care. In his affidavit, Defendant Siddiq provides the following testimony as to Plaintiff's medical treatment, which, as demonstrated *supra* in Section II, is supported by Plaintiff's undisputed medical records:

The medical records reveal that [Plaintiff] was transferred from the [FCF to BCF] on March 27, 2019.

The initial records reveal that at the time of [Plaintiff's] transfer to [BCF] his temperature was 98.3, his blood pressure was 150/92, his pulse was 98, his respirations were 18, and his oxygen saturation level was 96%. All of [Plaintiff's] vital signs were within normal range.

The records reveal that on March 29, 2019, [Defendant Siddiq] wrote prescriptions for [Plaintiff] for Humulin, Lipitor, Aspirin, Norvasc, and Glucophage.

On April 2, 2019, [Defendant Siddiq] wrote a prescription for [Plaintiff] for Naprosyn (Naproxen). The records reveal that [Defendant Siddiq] thereafter wrote a prescription for Naprosyn (Naproxen) on April 16, 2019 and a prescription for Tylenol on May 2, 2019. The records further show that [Defendant Siddiq] wrote another prescription for [Plaintiff] for Naprosyn (Naproxen) on May 3, 2019.

The records further show that prescriptions were written for [Plaintiff] for Amoxicillin on May 7, 2019; for Tylenol on May 14, 2019; for Lisinopril on May 23, 2019; for Naprosyn (Naproxen) on May 13, 2019; Losartan on May 24, 2019; and Naprosyn (Naproxen) on June 19, 2019.

The records show that blood and chemical tests were taken of [Plaintiff] on April 30, 2019.

The records further show that on April 25, 2019, a Release of Responsibility form was completed by the medical provider indicating that [Plaintiff] was non-compliant, uncooperative and argumentative. [Plaintiff] refused to sign the Release of Responsibility form.

The records reveal that on April 16, 2019, a limited profile was provided to [Plaintiff] including the fact that [Plaintiff] was provided with a cane, and a bottom bunk profile was written.

The medical note from May 22, 2019 indicates that [Plaintiff] refused to receive any pain relief medication until he was able to see the doctor, stating that the medications that he had been prescribed did not work. The records from May 22, 2019 indicate that [Plaintiff] voiced understanding as to the instructions provided to him by the nurse.

The medical records reveal that [Plaintiff] is seen regularly by the nursing staff at [BCF], and his necessary medical needs have at no time been delayed or denied.

The medical notes from August 28, 2019 indicate that [Defendant Siddiq] saw [Plaintiff], and that he had no complaints.

Doc. 21-1 at 2-4. Defendant Siddiq testifies:

Medications such as Naproxen may cause an increased risk of serious cardiovascular thrombotic events, including myocardial infarction and stroke, which can be fatal. There are long term risks for taking medications such as Naproxen on a daily basis. Therefore, in my medical judgment, I was not of the opinion that [Plaintiff] needed to be taking Naproxen on a daily basis. Therefore, I wrote prescriptions for Naproxen for limited time.

Doc. 37-1 at 5.  Defendant Hakel provides further testimony as to Plaintiff's medical care and treatment, which is also supported by Plaintiff's undisputed medical records:

When [Plaintiff] was transferred from [FCF to BCF] on March 27, 2019, the intra system transfer documentation reflected the medications which [Plaintiff] had been prescribed at [FCF].

The [ADOC] prohibits controlled substances from being kept on persons by the inmates at [BCF].  [BCF] has a large mental health population and therefore the [ADOC] prohibits controlled substances being kept on person by the inmates in general population within the facility.

When [Plaintiff] arrived at [BCF], his primary treating physician became [Defendant Siddiq].  Once [Defendant Siddiq] became [Plaintiff's] primary care physician, [Defendant Siddiq] from then on decided what medications would be in the best interest of [Plaintiff] and prescribed and provided to [Plaintiff].

. . . .

Attached hereto is a copy of the disqualification list for keep on person self medications at [BCF].[12]

Number 8 on the disqualification list lists controlled substances which would have been the Naproxen referenced by [Plaintiff] in his Amended Complaint.

[Plaintiff] has at no time had to pay for any medication that he has received during his incarceration with the [ADOC].

Inmates are charged a small co-pay by the [ADOC] when inmates such as [Plaintiff] are seen by the health care providers with the exception of the chronic care clinic and other issues that fall outside the co-pay policy.

The co-pay policy is managed by the [ADOC] and is not a policy of Corizon, Wexford, or the medical providers of Corizon and/or Wexford.

The medication administration records[13] fully show that [Plaintiff] received the medications that had been prescribed for him by [Defendant Siddiq], [Plaintiff's] primary care provider.

---

[12]     *See* Doc. 32-1 at 30-31.

[13]     *See* Doc. 32-1 at 7-29.

Doc. 32-1 at 4-5; *see also id*. at 7-31.  Defendants Appling and Hakel further clarify that they "have nothing to do with the amount of copays charged to any inmate/patient," and that the amount of co-pays is established by the ADOC.  Doc. 59-2 at 3; *see also* Doc. 59-1 at 3.

Upon review of Plaintiff's medical records, it is clear Plaintiff received significant medical care while at BCF during the relevant time and that his prescriptions were neither denied nor delayed.  "Although [Plaintiff] may have desired different modes of treatment, the care [Medical Defendants] provided did not amount to deliberate indifference."  *Hamm*, 774 F.2d at 1574-75 (citing *Bass v. Sullivan*, 550 F.2d 229, 231-32 (5th Cir.), *cert. denied*, 434 U.S. 864 (1977); *accord, Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (1st Cir.1981) ("Where a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law.")).

Insofar as Plaintiff alleges being required to make co-payments resulted in Medical Defendants' withholding treatment, Plaintiff's evidence does not create a genuine issue of material fact as to this claim.  In his amended complaint, Plaintiff maintains Medical Defendants fraudulently charged co-pays and withheld treatment.  As noted above, however, Plaintiff was seen and prescribed medication on a regular and consistent basis by medical personnel.  Plaintiff's claims, which appear to take issue with how he received treatment, do not amount to deliberate indifference.  *Hamm*, 774 F.2d at 1574-75.

The undisputed evidence reflects Plaintiff received timely and appropriate access to prison medical providers and medication during his confinement at BCF who examined and treated Plaintiff for his medical condition.  The record demonstrates medical personnel at BCF responded to Plaintiff's complaints and provided medical care for Plaintiff consistent with his medical history.  Their responses to Plaintiff's condition, as attested to by Medical Defendants and uncontroverted by Plaintiff, were reasonable and appropriate.  Defendant Siddiq's affidavit regarding the provision of medical care afforded Plaintiff at BCF is corroborated by the contemporaneously compiled objective medical records.  The law is settled that "[s]elf serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records," and they do not do so here.  *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)).  While the record shows Plaintiff requires certain medications, Plaintiff presents no evidence

showing the way Medical Defendants addressed his medical concerns or condition created a substantial risk to his health that the attending health care personnel consciously disregarded. The record is therefore devoid of evidence—significantly probative or otherwise—showing that Medical Defendants acted with deliberate indifference to a serious medical need experienced by Plaintiff. *Farmer*, 511 U.S. 825; *Quinones,* 145 F.3d at 168. Accordingly, Medical Defendants are due to be granted summary judgment on Plaintiff's Eighth Amendment claim.

**(iv)**      **Retaliation**

In Plaintiff's fourth claim, Plaintiff asserts, after the Court directed Medical Defendants to file a supplemental report (Doc. 22), Medical Defendants retaliated against Plaintiff by withholding medication on September 18 and 19, 2019, and by changing Plaintiff's order of deodorant for aspirin on September 17, 2019. Doc. 27. Medical Defendants deny they retaliated against Plaintiff. *See* Docs. 31-1, 37-1. Upon careful review of the record, the Court finds Plaintiff's allegations to be wholly conclusory and contradicted by the record.

A claim that a plaintiff was penalized for exercising a constitutional right is properly considered under the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir.1999) (*en banc*). The First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits. *Wright v. Newsome*, 795 F.2d 964 (11th Cir.1986); *Farrow v West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989); *Farrow*, 320 F.3d 1235, 1248 (11th Cir. 2003). Conclusory allegations of retaliation, however, cannot demonstrate the existence of each element requisite to establishing retaliation. *Sinaltrainal v. Coca-Cola Co*., 578 F.3d 1252, 1266 (11th Cir. 2009), *overruled on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012), (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit ... conclusory allegations as true"). *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

In ruling on an inmate's First Amendment retaliation claim, courts use a burden shifting analysis. *Moton v. Cowart*, 631 F.3d 1337, 1341-42 (11th Cir. 2011). A plaintiff must establish three elements: "(1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech." *Id*. at 1341 (internal quotations and citations

omitted); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X*, 175 F.3d at 397. Regarding the causation prong a court "asks whether the defendants were subjectively motivated" by the plaintiff's protected act. *Smith*, 532 F.3d at 1278. If the plaintiff shows that "his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Moton*, 631 F.3d at 1341-42 (quoting *Smith*, 532 F.3d at 1278). Upon production of evidence demonstrating a legitimate reason for the conduct and/or actions in question, the plaintiff, who has the ultimate burden of proof, must show there is a genuine dispute of material fact concerning the defendant's defense. *See Osterback v. Kemp*, 300 F.Supp.2d 1238, 1254 (N.D. Fla. 2003). Because any adverse action taken against a prisoner by a prison official can be characterized by the inmate as a retaliatory act, federal courts must "carefully scrutinize" retaliation claims brought by prisoners challenging adverse actions of correctional personnel, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and "approach prisoner claims of retaliation with skepticism and particular care. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Plaintiff asserts he was denied deodorant on September 17, 2019, and blood pressure medication on September 18 and 19, 2019. The record reflects, however, as to Plaintiff's claims of being denied blood pressure medication, Plaintiff received his blood pressure medication (Cozaar), on September 18 and 19. *See* Doc. 31-1 at 7. The records further reflects, while Plaintiff's "other blood pressure medication (Norvasc) was renewed on September 19, 2019, and on the renewal date, [Plaintiff] did not receive the Norvasc[,] the medical records clearly show that [Plaintiff] receive his Norvasc from September 20, 2019 forward." *Id.* at 31-1 at 4; *see also id.* at 6.

Insofar as Plaintiff asserts Medical Defendants retaliated by changing Plaintiff's store order from deodorant to aspirin, Defendant Siddiq testified that "medical personnel are not responsible for store bought orders such as aspirin and/or deodorant. Therefore, the medical staff at [BCF] could not control what [Plaintiff] received and/or did not receive from the ADOC store located at

the [BCF]."   Doc. 37-1 at 6.   In his response, Plaintiff does not dispute Defendant Siddiq's testimony.  *See* Doc. 55.

Plaintiff's filing of lawsuits constitutes protected conduct under the First Amendment. Regarding the second element, the Court finds Plaintiff fails to indicate what deterrence Medical Defendants' conduct about which he complains had on exercising his First Amendment rights.  *See* *Bennett*, 423 F.3d at 1250 (internal citations omitted) ("plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights").   "A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision 'subject to exhaustive challenge,' solely because he was engaged in a First Amendment right."  *Adams v. James*, 784 F.2d 1077, 1082 (11th Cir. 1986); *Adams v. James*, 797 F. Supp. 940, 949 (M.D. Fla.1992)."  *Cranford v. Hammock*, 2010 WL 916031 *8 (N.D. Fla. 2010).

Medical Defendants' evidence shows that Plaintiff's blood pressure medication was not delayed, and that Medical Defendants are not responsible for Plaintiff's store purchases.  Plaintiff has not come forward with evidence to dispute the provided medical records or Defendant Siddiq's testimony.

Plaintiff has submitted no direct evidence that his legal activities were any motivating factor in his medical treatment or having his order changed from deodorant to aspirin.  Medical Defendants have submitted admissible evidence which reflects that their actions towards Plaintiff were not predicated upon any retaliatory motive.  In light of the foregoing, Medical Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

### (v)   Defendant Wexford Health Solutions

Liberally construing Plaintiff's amended complaint, Plaintiff asserts Defendant Wexford Health Sources, Inc. ("Wexford"), has a policy or custom to defraud inmates by requiring they submit co-pays for their medication.  *See* Doc. 27.  The law is settled that, generally, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotation marks and citation omitted).  The Eleventh Circuit has extended that rule to private corporations like Defendant Wexford.  *See, e.g.*, *Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011).  Where the state and the entity enter such a contractual agreement, the private healthcare company is a "person" acting under color of state law, and thus may be liable under §

1983. *Howell v. Evans*, 922 F.2d 712, 723-24 (11th Cir.) *vacated pursuant to settlement*, 931 F.2d 711 (11th Cir. 1991), *and opinion reinstated sub nom. Howell v. Burden*, 12 F.3d 190 (11th Cir. 1994) (internal citation omitted). By virtue of the contract, the private entity also "performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under section 1983." *Craig*, 643 F.3d at 1310 (internal quotation marks omitted).

Accordingly, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that a municipality cannot be held liable on a theory of *respondeat superior*), a private entity providing medical services to inmates pursuant to a contract with the state is only liable under § 1983 where it employs a custom or policy constituting deliberate indifference to an inmate's serious medical need. *See Howell*, 922 F.2d at 724 n.13 (noting that the policy or custom analysis applied to a corporation is the same as the analysis applied to municipalities under *Monell*). To hold a defendant liable as a supervisory official, a plaintiff must show that "the supervisor personally participate[d] in the alleged constitutional violation or [that] there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Hartley*, 193 F.3d at 1269.

The challenged policy or custom need not be express. A policy is "a decision that is officially adopted" or created on behalf of the entity. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A custom is any practice that is "so settled and permanent" as to carry the force of law. *Id*. To establish the existence of a custom, the evidence must show more than an isolated incident leading to constitutional injury, and instead, must reflect the pattern is widespread. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004). To show the practice at issue is sufficiently widespread to constitute a custom, a plaintiff ordinarily must produce evidence that the practice resulted in deficient treatment of other inmates. *See Craig*, 643 F.3d at 1312. Ultimately, the plaintiff must produce sufficient evidence of a "series of constitutional violations from which deliberate indifference can be inferred." *Id*. (quoting *Estate of Novack ex rel. Turbin v. Cty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000)).

On this record, Plaintiff has not produced sufficient evidence to establish a genuine dispute of material fact regarding whether Defendant Wexford implemented a policy or custom evidencing deliberate indifference to his serious medical needs. Specifically, Plaintiff produces no evidence of a custom or policy implemented by Defendant Wexford to withhold medically necessary

medical care or treatment to save money nor evidence of a permanent widespread practice to deny necessary medical care or treatment to inmates to control costs.[14] *See Craig*, 643 F.3d at 1310 (explaining that to impose liability under § 1983, a plaintiff must prove that a municipality had a "policy or custom" of deliberate indifference that led to the violation of his constitutional right). Defendant Wexford is therefore, granted summary judgment on Plaintiff's claims. *See Hartley*, 193 F.3d at 1269.

### B.   Plaintiff's Claims Asserted Against ADOC Defendants

In his amended complaint, Plaintiff asserts similar grounds for relief against ADOC Defendants as he asserts against Medical Defendants.  Doc. 27.[15]  As noted *supra*, ADOC Defendants deny Plaintiff's allegations and further assert they are entitled to sovereign and qualified immunity.  Docs. 14, 39, 43.

### (i)   Sovereign Immunity

Plaintiff brings suit against ADOC Defendants in their official capacity.  Insofar as Plaintiff seeks to sue ADOC Defendants in their official capacity, they are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that ADOC Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from

---

[14]   Indeed, as noted by Medical Defendants, co-pay amounts are determined by the ADOC, not by Defendant Wexford.  *See* Doc. 59-2 at 3; *see also* Doc. 59-1 at 3.  Plaintiff's response neither disputes nor contradicts this testimony.  Doc. 55.

[15]   As to Plaintiff's claim of retaliation, however, this ground solely appears to be asserted against Medical Defendants.  In his amended complaint, Plaintiff asserts, because Medical Defendants were required to file a supplemental special report, they allegedly retaliated against Plaintiff.  Doc. 27 at 3.  The Court's September 13, 2019, Order did not direct ADOC Defendants to supplement their special report.  *See* Doc. 22.

them in their official capacity.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### (ii)    Qualified Immunity

ADOC Defendants assert, in their individual capacity, they are protected by the doctrine of qualified immunity.  "'Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ash v. Landrum*, 819 F. App'x 770, 772-73 (11th Cir. 2020) (quoting *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007)) (quotation marks omitted in original).  "To rely upon qualified immunity, a defendant first must show that he or she acted within his or her discretionary authority."  *Taylor v. Villegas*, No. 6:17-CV-135, 2019 WL 4741705, at *8 (S.D. Ga. Sept. 28, 2019) (citing *Mobley v. Palm Beach Cty. Sheriff Dep't.*, 783 F.3d 1347, 1352 (11th Cir. 2015)).  "Specifically, a defendant must show that he or she 'was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'"  *Id*. (quoting *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

Here, Plaintiff does not dispute ADOC Defendants were acting within their discretionary authority as BCF Warden and as acting business manager.  Doc. 55.  ADOC Defendants may therefore properly assert the defense of qualified immunity, "and the burden now shifts to Plaintiff to show that qualified immunity is not appropriate."  Taylor, 2019 WL 4741705, at *8 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).  "'To determine whether a plaintiff has met h[is] burden, a court must both decide whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right and whether the right at issue was clearly established at the time of defendant's alleged misconduct.'"  *Id*. (quoting *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)) (quotation marks omitted, second alteration in original).

### (a) Conspiracy to Defraud[16]

Plaintiff maintains that ADOC Defendants conspired to defraud Plaintiff when, upon his arrival at BCF, Plaintiff's medication was confiscated.  Doc. 27 at 2-3.  Defendant Richie testifies, that she, "at no time...had any conversations with any medical providers with regard to necessary

---

[16]    The Court herein adopts and incorporates the applicable law to establish conspiracy as set forth *supra* in Section A Subsection ii.

medical care or treatment needed by [Plaintiff] or provided to [Plaintiff]. Furthermore, [Defendant Richie] has had no conversations with any medical provider with regard to any prescriptions provided to [Plaintiff]." Doc. 39-1 at 3. Defendant Harris further testifies that she "has no knowledge of the confiscation of [Plaintiff's] medication, the distribution of [Plaintiff's] medication, medical treatment received by [Plaintiff] from the Wexford Health Care staff, or any decisions notated for the medical copay charges obtained for [Plaintiff's] sick call visits." Doc. 39-2 at 3.

The Court has carefully reviewed Plaintiff's allegations of conspiracy asserted against ADOC Defendants and finds they allege no facts suggestive of conspiracy to defraud. Plaintiff's claim of conspiracy to defraud are self-serving, purely conclusory allegations that fail to assert those material facts necessary to establish a conspiracy by ADOC Defendants. Plaintiff alleges no facts suggesting a conspiracy or an agreement other than seemingly contending ADOC Defendants had a common goal, scheme, or purpose to violate Plaintiff's constitutional rights when he was transferred to BCF. Indeed, Defendants Richie and Harris both deny having any knowledge as to the alleged confiscation of Plaintiff's medications. As noted *supra*, Plaintiff's mere use of the word "conspiracy" regarding the actions of ADOC Defendants about which he complains is insufficient to state a conspiracy claim. Similarly, Plaintiff's allegations fail to allow the Court to draw the conclusion that a conspiracy claim is plausible. *Iqbal*, 129 S.Ct. at 1949. *See Fullman*, 739 F.2d at 556-57. Because Plaintiff has failed to show any violation of a constitutional right, ADOC Defendants are entitled to qualified immunity on Plaintiff's allegations of conspiracy.

### (b) Deliberate Indifference[17]

In his amended complaint, Plaintiff broadly suggests ADOC Defendants acted in deliberate indifference to his serious medical needs. Doc. 27. In his response to ADOC Defendants' special report, Plaintiff specifically asserts ADOC Defendants acted deliberately indifferent to his serious medical needs when: (1) Defendant Harris negligently failed to report his co-pay dispute between Plaintiff and the medical vendor and (2) when Defendant Richie "failed or refused to do her job as [set forth in ADOC policy] of making sure all inmates are properly cared for" and failing to notify the ADOC Associate Commissioner Health Services of the conflict Plaintiff "had to endure." Doc. 55 at 2.

---

[17] The Court herein adopts and incorporates the applicable law to establish deliberate indifference to a serious medical need, in violation of the Eighth Amendment, as set forth *supra* in Section A Subsection iii.

As noted *supra*, to state a § 1983 deliberate indifference claim, Plaintiff must allege sufficient facts to establish that ADOC Defendants (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted by conduct that is more than mere negligence. *See Farrow*, 320 F.3d at 1245-46.   Under the circumstances of this case, the Court finds that the actions of ADOC Defendants did not constitute deliberate indifference and they are, therefore, entitled to qualified immunity.   Plaintiff's self-serving allegations of ADOC Defendants' failure to follow policy or to adequately perform duties do not create a question of fact in the face of contradictory, contemporaneously created medical and administrative records.   *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that a court need not believe a party's version of facts at the summary judgment stage when such version is "blatantly contradicted by the record, so that no reasonable jury could believe it[.]"); *Feliciano v. City of Miami Beach*, 707 F.3d at 1253-54 (11th Cir. 2013) (same).

In addition, Plaintiff has presented no evidence that ADOC Defendants consciously disregarded his alleged injuries.   *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (holding that for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition and ignore known risk to serious condition to warrant finding of deliberate indifference).   Rather, the evidence before the Court shows that Medical Defendants treated Plaintiff and timely prescribed Plaintiff his necessary medications.   The evidence further shows that ADOC Defendants did not impede Plaintiff's access to any medical treatment in connection with the ADOC policy to require co-pays for certain medical care.   The record is therefore devoid of evidence showing that ADOC Defendants acted with deliberate indifference to Plaintiff's medical needs.

Insofar as Plaintiff seeks to assert liability against ADOC Defendants in their supervisory capacity, the law is well settled that "§ 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior."   *Dasher v. Eunice*, No. 2:17-CV-48, 2017 WL 4582797, at *2 (S.D. Ga. Oct. 13, 2017), *report and recommendation adopted*, No. 2:17-CV-48, 2017 WL 6003081 (S.D. Ga. Dec. 4, 2017) (citing *Bryant v. Jones*, 575 F.3d 1281, 1299 (11th Cir. 2009); *Braddy v. Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 801 (11th Cir. 1998)) (footnote omitted).   "A supervisor may be liable only through personal participation in

the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations." *Id*. (citing *Braddy*, 133 F.3d at 802). Consequently, to state a claim against a supervisory defendant, Plaintiff "'must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct.'" *Id*. (quoting *Barr v. Gee*, 437 Fed. Appx. 865, 875 (11th Cir. 2011)).

To the extent Plaintiff attempts to hold ADOC Defendants responsible for the actions of Medical Defendants, as noted above, there is no *respondeat superior* liability in § 1983 actions. *Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014). In any event,

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong." *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, 'supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988).' *Williams v. Limestone County, Ala.*, 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007). Regardless, as noted *supra*, the Court found that Medical Defendants were not deliberately indifferent to Plaintiff's medical needs, because, *inter alia*, Plaintiff failed to show that the ADOC policy requiring co-pays for certain medical care resulted in Medical Defendants denying or delaying Plaintiff medical treatment or prescriptions.

Next, to the extent Plaintiff asserts deliberate indifference against ADOC Defendants in connection with Plaintiff's payment of co-pays, "[c]harging inmates a small medical fee for medical care while incarcerated does not violate the inmates' constitutional rights." *Torres v. Gee*, No. 8:11-CV-2789-T-30EAJ, 2011 WL 6780866, at *4 (M.D. Fla. Dec. 27, 2011) (citing *Reynolds v. Wagner*, 128 F.3d 166 (3d Cir.1997) (prisoners who had a fee deducted from their accounts when they sought certain medical services did not have their constitutional rights violated where medical services were provided to those with unfunded accounts and prisoners had prior notice);

*Jabbar v. Woody,* 2009 U.S. Dist. LEXIS 129790, *13 (E.D. Va. Sept. 29, 2009) ("Inmates are not entitled to free medical care, and an inmate's displeasure at having to pay [a] co-payment does not present a constitutional claim.")).  Plaintiff's medical records show that his treatment was neither delayed nor denied in connection with the co-pays and the record further shows Plaintiff's co-pay amounts were in accord with ADOC co-pay policy.  Doc. 55-1 at 3-4; *see also* Docs. 43-1 at 10-13, 59-1 at 5-11.

Finally, insofar as Plaintiff asserts either ADOC Defendant violated their own policies or administrative regulations in failing to report his co-pay disputes, he is entitled to no relief.  "The law is well-settled that infringements of agency rules, regulations, policies or procedures do not, without more, amount to constitutional violations."  *Hutchins v. Myers,* No. 2:16-CV-324-WHA, 2019 WL 2169211, at *9 (M.D. Ala. Apr. 24, 2019), *report and recommendation adopted,* No. 2:16-CV-324-WHA, 2019 WL 2163610 (M.D. Ala. May 17, 2019) (citing *Fischer v. Ellegood,* 238 F. App'x 428, 431 (11th Cir. 2007) (holding that Plaintiff's claim alleging defendants violated an internal jail policy was insufficient to survive summary judgment); *Sandin v. Conner,* 515 U.S. 472, 484-86 (1995) (noting that prison regulations are "primarily designed to guide correctional officers in the administration of a prison" and "such regulations are not designated to confer [constitutional] rights on inmates"); *Magluta v. Samples,* 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004) (mere fact governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue); *Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996) (claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *United States v. Caceres,* 440 U.S. 741, 751–52 (1979) (mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley,* 316 F. App'x 300, 303 (4th Cir. 2009) (same)).

In sum, Plaintiff's broad, self-serving allegations asserted against ADOC Defendants fail to show any constitutional deprivation and they are entitled to qualified immunity on Plaintiff's claims of deliberate indifference.

## C.    The Court Declines to Exercise Supplemental Jurisdiction

Plaintiff complains that the medical care and treatment provided by Defendants implicates the state torts of medical malpractice and intentional infliction of emotional distress.[18]  Review of

---

[18]    Insofar as Plaintiff intended to assert a claim for emotional distress under the Prison Litigation Reform Act ("PLRA"), "the PLRA limits recovery available to prisoners as no federal actions may be brought 'for mental or

such claims is only appropriate upon exercise of the Court's supplemental jurisdiction. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In the posture of this case, however, the exercise of such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, 'the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact."'" *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984). The exercise of supplemental jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428. In view of the Court's resolution of the federal claims presented in the amended complaint, Plaintiff's supplemental state tort claims are due to be dismissed. *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

## IV.    Conclusion

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that:

1.    The motions for summary judgment filed by Medical Defendants (Docs. 21, 32) and ADOC Defendants (Doc. 39) be **GRANTED**[19] with respect to Plaintiff's federal claims.

2.    Plaintiff's Pendent state law claims be DISMISSED without prejudice.

---

emotional injury suffered while in custody without a prior showing of physical injury of the commission of a sexual act.'" *Day v. Vaughn*, 56 F. Supp. 3d 1377, 1381 (S.D. Ga. 2014) (quoting 42 U.S.C. § 1997e(e)). Because Plaintiff makes no showing of physical injury, Plaintiff cannot succeed in a claim for emotional damages under the PLRA.

[19]    While the Court recommends granting Defendants' motions for summary judgment, to the extent Defendants seek reimbursement of all costs and fees incurred in defense of this action (*see, e.g.* Doc. 13 at 7; *see also* Doc. 21 at 25), the Magistrate Judge recommends denying this request. "Under [42 U.S.C.] § 1988, a prevailing defendant is entitled to recover attorney's fees if 'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Sibley v. Levy*, 203 F. App'x 279, 280–81 (11th Cir. 2006) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)). To determine "whether a suit is frivolous, a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Id*. (quoting *Sullivan v. Sch. Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985)) (internal quotations and citation omitted). "The three factors we have noted to be used in determining if a claim was frivolous are: '(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits.'" *Id*. (quoting *Sullivan*, 773 F.2d at 1189). While the Eleventh Circuit acknowledges frivolous cases may be dismissed on summary judgment (*id*.), here, the Court recommends dismissal, without prejudice, Plaintiff's state law claims. Based on a review of the record, the Court does not find this case to be frivolous and recommends denying Defendants' request for reimbursement.

3.  Judgment be ENTERED in favor of Defendants.

4.  This case be DISMISSED with prejudice.

It is further

ORDERED that on or before **April 18, 2022**, the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a de novo determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 4th day of April 2022.

/s/ Charles S. Coody
CHARLES S. COODY,
UNITED STATES MAGISTRATE JUDGE